Good morning everyone and welcome to the Ninth Circuit. We'll hear the cases in the order on the day sheet. The first case is Ramirez-Alcaraz v. Barr and that's submitted on the briefs. The next case is United States v. Eli Sloan and that's submitted on the briefs. And the first case for argument is United States v. Vicente Cuevas-Lopez. Good morning, Your Honor. My name is Jeff Buchel. I'm counsel for appellant Mr. Cuevas-Lopez. I'd like to request a reservation of two minutes of time for rebuttal. Okay, please watch the clock. Thank you, Your Honor. Your Honors, the primary issue in this case, or at least what I would call the overarching issue in this case, is how far the court can stray from the cardinal principles of statutory and guideline interpretation, which state in effect that the text of the guideline is primary. The court should consult the text of the guideline just as it would consult the text of a statute. And where the text is clear and the meaning is plain, then the court should apply the text of the guideline. Corollary to that principle is to the extent that the court is directed to certain commentary or other portions of the guidelines, once again the court should consult the text and apply the text faithfully, apply the plain meaning of the text faithfully. As we know from other cases, Winfield, for example, which was cited in appellant's briefs, that's a D.C. Circuit Court of Appeals decision from last year, where the D.C. Circuit emphasized that the tail can't be permitted to wag the dog. So you have two circuit opinions, other circuits that come down squarely against your position. Why shouldn't we just join our sister circuits on the interpretation of the guidelines and say that the single sentence rule applies here? Well, Your Honor, first of all, and I'll address that question, the first, well, I'll address that question. The Fifth Circuit really kind of took the lead on this case or on this issue. And the Fifth Circuit, in my view, is the only circuit that really stands for the proposition that an issue involving, a case involving interpretation of the guidelines should yield the result that the Fifth Circuit has ruled in. The problem with the Fifth Circuit opinion, and I've reviewed the opinion that was just published a few days ago, the problem with the Fifth Circuit opinion, I think, is multiple. First of all, it does not, contrary to the government's position, that case did not deal with the precise issues raised in this case. For example, the Fifth Circuit does not spend any amount of time, any significant amount of time, wrestling with the issue of what the guideline actually says. The Fifth Circuit does not... But they're answering the exact question that we're presented with here, aren't they? Well, I would say not exactly the same question because it gets back to the tail wagging the horse. The Fifth Circuit's guidelines have basically seemed to implicitly take the position that with respect to interpreting the guidelines, you can just cherry pick from anything, any text in the guidelines, anywhere you want to go. You can go to any guideline, you can go to commentary, you can go to policy statements, you can go whether it's cross-referenced or not. Okay, so said otherwise, though, the existence of that Fifth Circuit decision and other decisions certainly suggests that the district court didn't plainly err in its determination and we're here on plain error review, isn't that right? Well, of course, Appellant has argued that the court should conduct a de novo review in this case. So we have discretion to do so, perhaps, but we're not required to do so and since there was no objection, we can consider whether the district court made a plain error and there isn't really an argument as to that, is there? Well, I'm not so sure. When you look at the Supreme Court's decision in, I'm not sure if I'm pronouncing it correctly, Morales, which came out last year, the opinion that was authored by Judge Sotomayor, it seems to me that that sets a pretty low bar in the sentencing context for what constitutes plain error. Judge Sotomayor wrote at some length about fairness in a judicial system must insist that sentencing proceedings are conducted appropriately, conducted properly. In that case, the difference ultimately would have been potentially six months less and less time in prison and that case was remanded. But for you to show that this error that you're asserting was clear, you'd have to convince us that the Fifth Circuit was clearly wrong. So, I mean, you might convince us that they're wrong, isn't it? Well, I, you know, my concern is that the Fifth Circuit, for some reason, thought on policy grounds that perhaps the outcome that they reached was the preferable outcome. They didn't really grapple with the textual argument. The guideline says if, you know, in reference to a prior conviction, if the defendant committed an offense for which he received a conviction, it's stated in the singular and then states what the sentence was, that this is going to be the guideline calculation. I mean, it's very clear in the text of the guideline that the guidelines are referring to a defendant's singular conduct in the commission of a singular offense, which results in a singular conviction, which in turn results in a singular sentence. It seems to me, in this case, the defendant's sentence was, if I recall correctly, was three and a half years on the underlying burglary. There were two burglaries. His sentence was three and a half years on each burglary. Therefore, his sentence was three and a half years. There's some discussion, if I'm not mistaken, there's some discussion by the Fifth Circuit that in another context, consecutive sentences could be interpreted as an indication of the seriousness of the offense from the point of view of the sentencing judge. But I think the court can take judicial notice of the Arizona Criminal Code in its own experience as your experienced jurists and attorneys. Consecutive sentences can be meted out for any number of reasons. So we don't know, nor should we inquire into the state of mind. They don't have to be imposed consecutively, though, do they? These sentences wouldn't have been required to be imposed consecutively? Well, in Arizona, consecutive sentences are the default mode, absent an explanation as to why they're not consecutive. And very often they're given consecutively because a prosecutor says, Judge, there's two victims. It would be unfair to sentence, to impose concurrent terms when there are two victims. So we don't know what's going on in the state courts, but it's not necessarily a gauge of something that a federal court years later should take into consideration. If the single sentence rule does apply, though, it treats consecutive sentences differently than concurrent sentences, correct? Because it talks about how to count them, and if they're concurrent, you just use the longest one, and if they're consecutive, you use the total. Well, in the context of computing criminal history, I would agree with that. But it seems to me that in the context of arriving at an offense level calculation in the guidelines, that that's not a good thing. That's not accurate. And there are many cases, the Fifth Circuit notwithstanding, there are many cases, even in our circuit, that have emphasized the difference between Chapter 4 and Chapter 2. And there are reasons why we don't want to use Chapter 4 calculations to determine offense levels in Chapter 2. You have a few seconds left. Do you want to save that? I think I'll save that. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Cory Mantay on behalf of the United States for the District of Arizona. Your Honors, the District Court did not plainly or otherwise err in applying the 10-level sentencing enhancement instead of the 8-level sentencing enhancement that the defendant currently argues for on appeal. The government would respectfully request that the Court decline the defendant's invitation to create a circuit split with the Fourth and Fifth Circuits as those rulings correctly address the identical issue here and were correct. Indeed, those courts rejected almost identical or at least substantially similar arguments that the defendant currently advances on appeal here. Racing through all of the references and the cross-references in the sentencing guidelines, I didn't see anywhere that the single-sense rule of 4A1.2A2 actually applied to 2L1.2B2. There was actually no cross-reference at all that I could find. Do you agree with that? That's correct, Your Honor. So the Fifth Circuit said, because there's some commentary suggesting for criminal history calculation you should read those two sections together, therefore you should read them together for the enhancement. Is there any basis for that in the sentencing guidelines or any reason why we should follow their lead on that? Yes, Your Honor. I would actually agree with the Fifth Circuit's approach in that the enhancements under the 2L1.2 and the commentary are determined by a sentence-imposed approach. So in calculating the sentence-imposed and the appropriate enhancement, a court will actually have to go and consider the criminal history guidelines, specifically the single-sentence rule, to determine prior relevant convictions and how the enhancement or the maximum sentences applied from those prior convictions. Are there other places in the guidelines that require us to take these additional steps how to calculate criminal history and say you should use that for determining enhancements? Can you cite me to another guideline that takes that approach or other guidelines that take that approach? Off the top of my head, Your Honor, I can't think of anything. Obviously, the prior version of the illegal reentry sentencing guidelines had the same approach. But off the top of my mind, I can't think of an analogous provision that directly deals with the type of aggregation that occurs here. Because there is, I think it's a 2L1.2, excuse me if I'm referring to the wrong section. There were so many sections. But there was one that says, well, if you have three misdemeanors, then you'll get this sort of enhancement. So clearly, the sentencing guidelines were specifically saying we want you to consider these three prior offenses together. But nothing like that is included in the other enhancements. I'm sorry for interrupting, Your Honor. But that's correct, Your Honor. All the other enhancements under the 2L1.2 calculations are determined by the sentence imposed approach. I will make one caveat, though. In the initial part of the guideline, there is an automatic four-point enhancement, four-level enhancement, if a defendant had a prior illegal reentry conviction. Otherwise, you're absolutely correct, Your Honor, in that the enhancements are determined by the length of the sentence imposed. But when I look at what they cross-referenced for the definition of sentence imposed, they're trying to help the courts distinguish between, well, what if part of the sentence is suspended, and what's the maximum, and nothing to do with how you would aggregate them. Correct, Your Honor. And that was sort of the bulk of the Fifth Circuit's analysis in the Garcia-Sanchez case, in which the court, after evaluating the cross-references, essentially concluded that with the operation of how the 2L1.2 cross-references to the criminal history rules, that the enhancement actually impliedly incorporated the single-sentence rule. And that was really the bulk of the analysis in the Fifth Circuit. And indeed, the Fifth Circuit approved the Fourth Circuit's earlier approach based on that. Any other examples of where we said implicit approval is enough? Implicit relationship between two parts of the guidelines? Because we do have those instructions in 1B1 something, sorry, that say, no, just do exactly what we say. And if we refer to a specific section, just look at that specific section. So very strict about that, and not apparently looking at implied relations. Have we ever held that, or can you give me another example? Absolutely, Your Honor. Actually, in the government's brief, the government cited United States versus Ortiz Gutierrez. And in that case, despite the fact that there were no express cross-references between the enhancement provision and the criminal history rules, the court in its analysis concluded that it made good sense to look to the criminal history rules because the analysis was very similar. Not identical, but again, the analysis under the enhancement calculations and the criminal history calculations serve really a fundamental purpose in determining the severity of prior convictions and what the appropriate punishment should be. So in that view, that rule is also consistent with Your Honor's reference to the background materials and the guidelines themselves. And Your Honors, if there are no additional questions, I would submit. I have a question about whether you can point us to any case in which there was no objection, so it could be plain error, but it's a pure legal question, and there would be no prejudice for when it was raised, and yet we applied plain error instead of de novo. Your Honor, the government relied extensively on the United States' Arparicio case, and the government relied on that case extensively to argue that this court should decline to apply a de novo standard in its discretion. And the government made the point in its briefing that without the objection, the contemporaneous objection, the parties, and indeed this court, has been deprived the opportunity of a well-reasoned order from the district court in consideration of this issue. And if there are no other questions, I would submit. I'm sorry, I'm just looking at that case. Did that case actually apply plain error, though, or did it apply de novo? It did apply a plain error standard. Okay. Thank you, Your Honors. Okay. Well, I guess I'll have to make this quick. Gonzalez-Arparicio was actually a case I handled on appeal. The reason the court used a plain error standard was because the court argued that there were facts that needed to be resolved, and that's why it needed to go back to the district court. Despite the absence of any precedent in the Ninth Circuit, the government's position is the court should use cherry-pick whichever portions of commentary it wants to in order to overrule and provide controlling authority over the text of the guideline as well as the text of the specific commentary that is referred to by the court, as well as the commentary itself. And just since I'm running over time, I just want to say that if you examine the commentary carefully, you will see that even in the commentary, what you're faced with is a fair amount of ambiguity and it's not really clear. And therefore, I think the court should rely on the plain text. Thank you. We thank both parties for their argument. The case of United States v. Cuevas-Lopez is submitted.
judges: Clifton, Ikuta, Friedland